**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**PAUL C. COOPER**                                                                                          **PETITIONER**


**VS.**                              **CASE NO. 5:09CV00278 SWW/HDY**


**LARRY NORRIS, Director,
Arkansas Department of Correction**                                                                **RESPONDENT**


**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**


The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1

   1. Why the record made before the Magistrate Judge is inadequate.

   2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

   3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

   Clerk, United States District Court
   Eastern District of Arkansas
   600 West Capitol Avenue, Suite A149
   Little Rock, AR 72201-3325

**DISPOSITION**

Paul C. Cooper, in the custody of the Arkansas Department of Correction (ADC), brings this habeas corpus action pursuant to 28 U.S.C. § 2254. He challenges the manner in which his sentence is being executed, alleging that he was wrongfully convicted of a disciplinary infraction at the ADC's Randall L. Williams Unit.

The facts are largely undisputed. On the July 5, 2009, Mr. Cooper reported to his assigned duty as a cook. There were ribs left over in the kitchen area from the previous day's meal. Cooper and inmate Booker were instructed to put the ribs in the walk-in cooler. Later, another inmate was

found to be in possession of the ribs.  Cooper was charged with disciplinary violations[1] for his involvement in the stolen ribs.  He was found guilty and punished with thirty days of punitive isolation and reduced in class to from IC to class IV.

The respondent contends this petition should be dismissed for three reasons: (1) lack of subject-matter jurisdiction; (2) failure to implicate a constitutionally-protected liberty interest; and (3) lack of any due process violation.  There is merit in all of the arguments of the respondent, and we recommend that the petition be dismissed and the relief requested be denied.

**Subject matter jurisdiction.**

Traditionally, federal habeas corpus actions are brought to secure release from illegal custody.  *Preiser v. Rodriguez*, 411 U.S. 475 (1973).  Habeas corpus actions are contrasted with civil rights complaints brought under 42 U.S.C. § 1983, which are available to challenge the conditions of prison life but not the fact or length of imprisonment.  *Id. at 499.*  Here, it is conceded that the prison disciplinary determination resulted in thirty days of punitive isolation and a reduction in class, but there was no loss of good-time credits.  Since there was no loss of good-time credits, the prison disciplinary sentence had no effect on the term of incarceration and a prisoner challenging the decision "raise[s] no claim on which habeas relief could have been granted. . ." *Muhammad v. Close*, 540 U.S. 749, at 754-55.  *See also Khaimov v. Crist*, 297 F.3d 783, 785-86 (8th Cir. 2002) (habeas claims regarding prison mail and segregation were improperly brought pursuant to § 2254

---

[1] He was charged with: (1) failure to obey verbal and/or written orders of staff; (2) unauthorized use of state property/supplies; (3) deliberately giving misinformation or falsely accusing another(s) in the course of an official investigation; (4) possession /introduction of clothing or property not issued or authorized by the center/unit; and (5) the purchase or exhange of unathorized articles or of authorized artilces through unauthorized channels.  See Docket entry no. 6-2, page 13.

because there was no allegation that the petitioner's sentence was illegally extended); *Kruger v. Erickson*, 77 F.3d 1071, 1073-74 (8th Cir. 1996) (finding a lack of subject matter jurisdiction where the petitioner did not "make a colorable allegation that his underlying conviction is invalid or that he is otherwise being denied his freedom from incarceration").

In summary, the sanctions imposed by the ADC disciplinary committee were punitive isolation and class reduction, with no loss of accrued good-time credits. There is no allegation or showing that success on his claims would result in any change in the duration of his confinement in the ADC. As a result, the claims would more appropriately be brought in a § 1983 civil rights action rather than in a habeas corpus proceeding.

**Constitutionally-protected liberty interest.**

Even if the Court had jurisdiction of this claim, we find that there was no due process violation. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of . . . liberty . . . without due process of law." U.S. Const. amend. XIV, § 1. Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state laws or policies. *Wilkinson v. Austin,* 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). However, the Due Process Clause does not protect prisoners from every adverse change in their confinement and does not create a protected liberty interest in any particular prisoner classification, *Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976).

Liberty interests arising from state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to actions which "inevitably affect the duration of [a prisoner's] sentence." *Sandin v. Conner,* 515 U.S. 472, 484, 487(1995).

Adjustments in classification as a result of disciplinary infractions are certainly a typical and expected component of prison life and do not "present a dramatic departure from the basic conditions of [an inmate's] sentence." *Id.* at 485. The applicable Arkansas statutes grant the Board of Corrections broad discretion in prescribing rules and regulations "for the maintenance of good order and discipline" in the state correctional facilities, and in classifying ADC inmates according to "good behavior, good discipline, medical condition, job responsibilities, and involvement in rehabilitative activities." Ark.Code Ann. §§ 12-29-101, 12-29-103(a), 12-29-202(a)(3) (2003 & 2007 Supp.). Inmates may be reclassified "as often as the [classification] committee deems necessary ... to maintain good discipline, order, and efficiency at the units, facilities, or centers." *Id.* § 12-29-202©). The pertinent Arkansas statutes simply do not provide a basis for finding a protected liberty interest in the classification level assigned to an inmate by prison officials. *See Sanders v. Norris,* 153 Fed. Appx. 403, 404 (8th Cir.2005) (unpub. *per curiam* ) (ADC inmate has no constitutional right to particular prison classification); *Madewell v. Roberts,* 909 F.2d 1203, 1207 (8th Cir.1990) (ADC inmate has no right to consideration of Class I status); *Strickland v. Dyer,* 628 F.Supp. 180, 181 (E.D.Ark.1986) (because Arkansas law does not protect a prisoner's right to any particular classification and there is no federally protected right regarding classification, ADC prisoner could not prevail on claim that he was deprived of due process due to disciplinary penalty of two-step class reduction).

Additionally, a class reduction, with no accompanying loss of accrued good-time credits, did not "inevitably affect" Petitioner's term of confinement under Arkansas law, as contemplated by *Sandin.* At most, the reduction in class status deprived him of the opportunity to earn future good-

time credits. Based on their level of classification, ADC inmates may earn up to thirty days of "meritorious good time" for each month of incarceration, thereby reducing an inmate's "transfer eligibility date," *i.e.,* the date he becomes eligible for transfer from the ADC to less restrictive placement or supervision by the Department of Community Correction (DCC). Ark.Code Ann. §§ 12-29-201(a) & (f)(1), § 12-29-202(b)(1), 12-29-204; *see id.* § 16-93-1202(2), (4), (11) & (12) (defining terms regarding transfer eligibility). Inmates who are reduced to the lowest class (Class IV) as a result of disciplinary action "shall not be entitled to earn meritorious good time." *Id.* § 12-29-202(b)(2). All or part of an inmate's accrued good time may be taken away by the ADC for infraction of prison rules. *Id.* § 12-29-203(a). However, these statutes do not provide an absolute entitlement to good time, stating only that an inmate *"may* be entitled" to meritorious good time, *id.* § 12-29-201(a)(1), and that an inmate who maintains a high classification *"may* earn" credit toward reduction of his transfer eligibility date, *id.* § 12-29-202(b)(1).

Furthermore, the statutes state that "[m]eritorious good time will not be applied to reduce the length of a sentence," *id.* § 12-29-201(d); and that transfer to DCC supervision "shall not be considered as a reduction of sentence," *id.* § 16-93-1302(d). Therefore, although good time affects the date that an inmate may become eligible for transfer to less restrictive conditions, which may include parole, it has no effect on the length of the sentence imposed by the trial court. In *McKinnon v. Norris,* 366 Ark. 404, 231 S.W.3d 725 (Ark.2006), the Arkansas Supreme Court rejected a prisoner's claim that the class reduction he received as a disciplinary penalty, which made him ineligible to gain credit for statutory meritorious good time, constituted the deprivation of a state-created liberty interest without due process. *Id.* at 728-30. The court stated: "[M]eritorious good time does not apply to reduce the length of a sentence.... As a result, Arkansas has not created a liberty

interest in good time under the constitutional analysis in *Wolff v. McDonnell."* *McKinnon,* 231 S.W.3d at 730; *see also Koontz v. Norris,* No. 08-75, 2008 WL 2310973, *2 (Ark.Sup.Ct. June 5, 2008) (unpub.) (no due process violation regarding prison disciplinary that resulted in segregation, loss of class status, and loss of good-time credits); *Bayless v. Beck,* No. 04-69, 2005 WL 1411656, *2 (Ark.Sup.Ct. June 16, 2005) (unpub.) (no due process claim regarding prison disciplinary proceedings because "Arkansas has not created a liberty interest in good time"). The state "retains the authority to interpret the scope and availability of any state-conferred right or interest." *Dobrovolny v. Moore,* 126 F.3d 1111, 1113 (8th Cir.1997).

Like the inmate in *McKinnon,* there is no evidence that petitioner lost more than the *opportunity* to earn further good-time credits due to a class reduction. Restricting this ability as a disciplinary sanction is a typical and not unexpected occurrence in the prison environment. In addition, because awarding good-time credits is discretionary, only affects an inmate's transfer eligibility date, and does not reduce his sentence, it cannot be said that good-time ineligibility due to reduced class status inevitably affects the duration of an inmate's sentence, as contemplated by *Sandin.* Therefore, his demotion to Class IV does not give rise to a protected liberty interest under federal or state law.

**Lack of any due process violation**.

Finally, Mr. Cooper challenges the disciplinary conviction, contending he is actually innocent of the charge. If we were to presume subject matter jurisdiction and the existence of a liberty interest, then it would be appropriate to consider whether Mr. Cooper was afforded the process which he was due. We should note, however, that the federal courts do not provide a de novo review of a prison disciplinary court's findings. *Cummings v. Dunn*, 630 F.2d 649, 650 (8th Cir. l980);

*Willis v. Ciccone*, 506 F.2d l0ll, l0l8 (8th Cir. l974). The only inquiry to be made by this Court is, therefore, whether "some evidence" supports the decision of the disciplinary board. *See Superintendent v. Hill*, 472 U.S. 445, l05 S. Ct. 2768, 86 L.Ed.2d 356, 365 (l985). *See also Brown v. Frey*, 807 F.2d l407, l4l4 (8th Cir. l986).

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." Ascertaining whether this standard is satisfied does not require an examination of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither is the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

*Superintendent v. Hill*, 472 U.S. at 455-56.

The notice of charges signed by the charging ADC officer, Sgt. Smart, indicates that he questioned Cooper and co-worker Baker concerning how two large packs of pork ribs left the kitchen area. They denied knowledge and Smart questioned other inmates and determined that Baker and Cooper "took a pan of pork ribs that were supposed to be placed in the cooler and warmed them up. After the ribs were warmed they were wrapped in plastic wrap and 'sold' to other inmates for commissary." Docket entry no. 6-2, page 24. The disciplinary hearing officer found Cooper guilty as charged and listed as the factual basis for the decision, "Cooper was in possession of ribs from the kitchen and was wrapped in plastic wrap." The evidence relied upon to reach the decision was the charging statement of Sgt. Smart, a photo of the ribs, and confidential witness statements. Docket

entry no. 6-2, page 25.  Mr. Cooper urges the Court to believe that he was not involved in the theft of the ribs.  He stresses that there was no eyewitness testimony by an ADC staffer and that the confidential statements are not necessarily reliable.  The pertinent standard set forth in *Hill*, however, does not invite the Court to weigh the credibility of the witnesses.  Instead, our inquiry is whether there is any evidence to support the guilty verdict.  In this case, there is ample circumstantial evidence to support the disciplinary convictions.  This evidence includes the statements and the fact that the ribs were found outside the kitchen.  The evidence cited in the DHO report constitutes "some evidence" to support the disciplinary conviction, satisfying the requirement of *Hill v. Superintendent, supra.*.  The DHO is charged with, among other things, evaluating the credibility of the witnesses.  The petitioner's disagreement with the credibility assessment of the DHO does not overcome the ruling when there is some evidence to support the DHO's decision.  As a result, we find no merit to the petitioner's third claim for relief.

Based upon the foregoing, we recommend that the petition for writ of habeas corpus be dismissed, and the relief requested be denied[2].

IT IS SO ORDERED this __27__ day of October, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

---

[2] The numerous motions for discovery are denied as moot.